No. 38,079

RICHARD DREILING, *Appellant*, v. J. W. COLBY, et al., *Appellees.*

(228 P. 2d 504)

Opinion filed March 10, 1951.

E. J. *Malone,* of Hays, was on the briefs for the appellant.

*Delmas L. Haney,* and *Benedict P. Cruise,* both of Hays, were on the briefs for the appellee, Della Edwards.

The opinion of the court was delivered by

WEDELL, J.: This was an action by Richard Dreiling against various defendants to quiet title to city property. Della Edwards is the only defendant involved in the appeal. She filed an answer and cross petition in which she sought to have plaintiff ejected from the premises and to recover rents for the period of plaintiff's alleged wrongful possession. Plaintiff's reply was a general denial.

A jury was expressly waived and the action was tried by the court.

On the trial plaintiff introduced not only the tax deed on which he based his title but also adduced testimony concerning moneys expended in the painting and repairing of the house, cost of shrubbery and improvement of the chicken yard. In rendering judgment in favor of the defendant for possession of the premises the court further set off against the claims of the plaintiff for improvements the amount it determined defendant was entitled to as the rental value of the premises from the date she first asserted title, to wit, the day she filed her answer and cross petition. The plaintiff appeals.

The first subject requiring our attention is the extent of the appeal. Appellee contends there was no valid motion for a new trial and that trial errors, if any, cannot be considered. The contention requires an examination of the record presented here. The first motion for new trial was filed January 23, 1950. It refers to a judgment, findings and orders made January 21, 1950. The record discloses no judgment or findings of any kind or character rendered on that date, or on any other date, prior to January 23, 1950. The record discloses the court made and filed findings of fact and conclusions of law on February 6, 1950. The journal entry of judgment including those findings and conclusions was filed February 10, 1950. It discloses the court's findings and conclusions were made February 6, 1950. Appellant's counsel approved that journal entry of judgment. On February 10, 1950, appellant merely refiled his original motion for new trial which referred only to a judgment, findings and orders made on January 21, 1950. The motion included no reference whatever to the findings and conclusions of law filed February 6, 1950, or to the final judgment filed February 10, 1950. Appellee contends the motion for new trial was a nullity, first, by reason of the fact it made no reference to the findings and judgment of February 6, 1950, and, second, for the reason the motion for a new trial dated February 10, 1950, was too late even if it had referred to the findings and conclusions of law filed February 6, 1950. No Sunday or any other holiday intervened between February 6 and February 10. Under these circumstances we are forced to conclude there was no valid motion for a new trial. It follows mere trial errors, if any, are not open to appellate review. (*Morgan v. Morgan*, 146 Kan. 880, 73 P. 2d 1105; *Erskine v. Dykes*, 158 Kan. 788, 791, 150 P. 2d 322.)

Appellee also asserts the notice of appeal restricts our review to certain specified matters. Although there may be some merit in the contention we shall not pursue the point. Manifestly, however, there being no valid motion for a new trial the scope of our review cannot be enlarged by a notice of appeal from orders or rulings alleged to constitute trial errors.

As previously indicated the trial court made findings of fact and conclusions of law. We think the principal issue on appeal resolves itself into a question whether the stipulated facts and the findings of the trial court support its conclusions of law. Its findings and conclusions were:

"1. This is an action brought by the plaintiff to quiet title to Lots 12, 13, and 14, Block C in the original town (now city) of Ellis and to bar each and all of the defendants from any and all right, title, estate lien or claim therein.

"2. One of the defendants, Della Edwards, by her answer, denies the allegations of the plaintiff's petition and alleges that she is the owner of said lots and was in the possession thereof until on or about November 20, 1942, when said premises were forcibly and unlawfully seized from her by one M. P. Emanuelson, since which time she has been excluded from the possession thereof. She further alleges that the plaintiff has no title or right to the possession of said premises, and that the reasonable value of the use thereof from November 20, 1942, to the present is $25 per month, or a total of $2,100. She prays that plaintiff take nothing; that she be adjudged to be the owner of said real estate; and that she be given possession thereof, and damages against the plaintiff for $2,100, and costs and such other relief as may be right and proper.

"3. Plaintiff's reply is a general denial.

"4. Upon the hearing of the issues thus joined between the Plaintiff and the defendant, Della Edwards, on December 14, 1949 and on January 9, 1950, it was stipulated by counsel that the plaintiff claims title by direct and unbroken chain from M. P. Emanuelson who bases his title on a tax deed issued August 5, 1940, and filed for record in the office of the register of deeds of Ellis County, Kansas, on August 28, 1940; a photostatic copy of such record being admitted in evidence as plaintiff's Exhibit 9. It was further stipulated that the Commissioner's journal, Vol. G, p. 419, shows a resolution under date of September 5, 1921, to accept and adopt the act of the legislature of 1921, governing the sale of real estate for taxes. It was further stipulated that the defendant, Della Edwards, was the record owner of the fee at the date of the tax deed, basing her title on an administrator's deed dated June 19, 1933 and recorded July 5, 1933.

"5. The main issue concerns the validity of the tax deed issued to M. P. Emanuelson. This deed must be held good unless it is void on its face inasmuch as no action was brought to avoid it within five years from the time it was recorded. G. S. 1935, 79-2505; Madigan v. Smith, 137 K. 269.

"6. Without attempting to be exhaustive as to all of the defects appearing on the face of the tax deed, I first notice the entire absence of any county

seal or other seal affixed by the County Clerk. This alone renders the deed void and lapse of time cannot cure the defect. See *Reed v. Morse,* 51 K. 141. Furthermore G. S. 1935, 79-2501, which was in effect at the date of this deed, requires that the deed recite the amount of the taxes, interest, penalties and costs, the proceedings relating to the sale of said property and the date and dates on which said proceedings were had, and the amount for which said property was sold. The fourth paragraph of the deed recites the taxes and charges for each of the years, 1934 to 1938 inclusive; but do these figures include interest, penalties and costs? The total of these amounts, plus the amount for which the property was bid off in the name of the county as recited in paragraph 3 of the deed, is $108.68. If interest is computed on these various items of taxes as provided by G. S. 79-2004, and dated to the above total, we reach a sum far greater than the amount of $116.69, the consideration recited in the deed. Apparently the consideration stated in the deed was reached by taking the item of $101.89 mentioned in the 7th paragraph of the deed as the subsequent taxes 'of the year 1933,' and adding to it the sum of $14.80, the exact amount for which the lots were bid in by the county on the first Tuesday of September, 1934, no interest being added thereto. How was the sum of $101.89 arrived at? The total of the taxes as recited for 1934 to 1938 inclusive is $93.88. Was interest added to this or were the taxes for 1939, then due, included to arrive at the figure of $101.89?

" 'Where a tax deed shows on its face that the tax sale certificate was assigned four and one-half years after the date of the sale without adding any interest for such interevening time, the certificate is being sold for less than the cost of redemption, the deed is void upon its face and can be set aside even after it has been of record for more than five years.' *Madigan v. Smith,* 137 K. 269.

"See also *Finn v. Jones,* 80 K. 431.

"7. It follows that the tax deed in this case must be held void and the defendant, Della Edwards, awarded the possession of the property.

"8. The evidence offered in support of the value of the improvements made on the property since the tax deed holder took possession thereof on or about August 28, 1940, is meager; but there is evidence to support the following:

"August 27, 1940, to Wm. Erbert, painting house      $15.00
"Oct. 7, 1940, to Wm. Erbert, painting house      13.00
"Aug. 29, to City Plumbing Co., repair toilet      3.51
"Sept. 7, to E. L. Raynesford, repair house      18.00
"Oct. 3, to E. L. Raynesford, repair house      10 00
"2 Evergreens at $2.00 each      4.00
"Chicken yard      12.00

"The plaintiff should have credit for the foregoing in addition to $116.69 paid for the tax deed on February 3, 1940. Each of the items should draw interest at the rate of 6 per cent. per annum from the respective dates thereof. See *Blair v. Pooler,* 160 K. 201.

"9. Included among the exhibits in the hands of the court reporter, but not identified nor offered in evidence, are found tax receipts covering these

lots for the years 1939 to 1940 inclusive. These taxes were paid by M. P. Emanuelson; and in equity, he should be allowed to recover therefor.

"10. The defendant, Della Edwards, should receive credit for the rental value of the property from October 25, 1949, the date of filing her answer, at the rate of $2.50 per week, and she should also receive credit for the toilet and coal shed hauled away in the amount of $5.00. The evidence also shows that a barn on the premises was sold by M. P. Emanuelson, but the value thereof or the amount received therefor is not shown. As a matter of equity, she should have credit for the value of this barn.

"11. Judgment will be rendered for the defendant, Della Edwards, and against the plaintiff, setting aside the tax deed and adjusting the equities of the parties under the occupying claimant's law, Ch. 60, Art. 19, G. S. 1935, in accordance with the findings herein. Any amount found due to the plaintiff will be decreed to be a first lien on the premises, and shall be payable within 30 days from the date of said judgment and before the defendant shall be let into possession of the premises. The costs should be equally divided between the plaintiff and the defendant, Della Edwards."

We think the court's findings support its conclusions.

As previously stated trial errors, if any are not now reviewable. This, of course, includes errors, if any, in the consideration of factual matters pertaining to the invalidity of the tax deed. Appellant adduced evidence at the hearing of the motion for a new trial, which he contends could not have been discovered previously with due diligence, that the original tax deed contained the required seal. The photostatic copy of the tax deed, introduced at the trial by stipulation of the parties as constituting the record, disclosed no seal. In the first place the motion for new trial was too late and the trial court was not obliged to entertain a hearing thereon. In the second place it appears the parties had stipulated to accept the photostatic copy of the tax deed on record for what it disclosed on its face. But we need not determine whether the trial court would have been obliged to grant a new trial on the alleged newly discovered evidence if the motion for new trial had been filed in time. The tax deed was invalid for another reason. It did not recite the data required by the statute to make it valid. That was sufficient to sustain the judgment. Evidence adduced on the invalid motion for a new trial that interest, penalties and costs were added, if true, did not comply with the requirements of the statute relative to what the tax deed was required to recite.

Appellant argues that upon his request he was entitled to a jury under G. S. 1949, 60-1903 of the occupying claimant's act to determine the amount due to him for lasting and valuable improvements

made on the land during his occupancy. (*Hazen v. Rounsaville,* 35 Kan. 405, 11 Pac. 150.)

That ordinarily an occupying claimant, after being defeated in a possessory action, is thereafter on his request entitled to a jury to determine the value of lasting and valuable improvements he has made on the premises seems clear. (G. S. 1949, 60-1901, *et seq.*) Whether the court committed reversible error in refusing appellant's request for a jury under the circumstances of this case requires consideration of the record. It is true, as appellant states, his petition did not allege he had made improvement on the land. Appellee in her answer and cross petition, however, made claim for rents during the period of appellant's alleged unlawful occupancy. In the reply appellant joined issue on that subject by denying appellee was entitled thereto. On the trial appellant, the plaintiff, began the trial by adducing not only evidence in support of his claim of title based on the tax deed but testified in detail concerning the improvements he had made on the premises and the amounts expended therefor, as shown in the court's findings. Appellant also introduced receipts showing payment for the improvements. Appellee thereafter adduced evidence touching the rental value for which she sought recovery under her answer and cross petition. No objection was made by appellant to this proceeding at the trial. Under this state of the record the court took the case under advisement.

A jury had been expressly waived. The court allowed appellee a small credit for rental value and rendered a money judgment in favor of appellant for the balance. Appellant's judgment in that amount was made a lien on the real estate. The journal entry of judgment filed February 10, 1950, recites:

"That plaintiff has made showing under the Occupying Claimant's Act of the State of Kansas of the value of improvements of said property. . . ."

The record discloses this journal entry was approved by appellant's counsel. On the hearing on March 13, 1950, of the motion for a new trial appellant requested a jury under the occupying claimant's act. The request was denied. The pertinent part of the journal entry covering that hearing discloses the court found:

". . . that the motion or request of plaintiff for a jury to determine the amount due under the Occupying Claimant's Act should be overruled for the reason that all such charges have heretofore been fully litigated by the parties."

The record discloses that journal entry was likewise approved

by counsel for appellant. Neither of the journal entries mentioned was approved as to form only. In the court's comments is contained also the following:

"There is no excuse for much of the evidence offered on the first trial of this case unless it was offered under the occupying claimant's act. The plaintiff offered receipts and other evidence to show the exact amount paid for small items as well as some not so small in connection with this property."

Appellant argues he did not introduce evidence on improvements under the occupying claimant's act but only on the theory of appellee's estoppel. Appellee states that contention is made for the first time in this court. We shall not pursue the subject. Estoppel must, of course, be pleaded and it was not.

In view of the record appellant is not in a good position to ask a reversal of the judgment on the ground he was not granted a jury trial on the issue of improvements. We think his conduct, in effect, constituted a waiver of his right to demand a jury. (*Kuykendall v. Taylor*, 93 Kan. 471, 474, 144 Pac. 818; *Carlyle v. Pee*, 128 Kan. 115, 118, 275 Pac. 1091.)

Another thought intrudes which probably should not be overlooked. It relates to the fundamental issue, the adjudication of appellant's lack of title. Upon what theory is appellant now entitled, as a matter of right, to appellate review of any question involved in the judgment as to title?

Having requested a jury to determine the value of improvements after the issue of title was determined against him it would appear appellant elected to consider the particular portion of the judgment pertaining to title as final and conclusive and that he is estopped from having appellate review on the issue of title. Such was the holding where a jury was not only requested but was called and performed. (*Bradley v. Rogers*, 33 Kan. 120, 5 Pac. 374.)

We think the request in the instant case for a jury to determine the value of improvements, after an adverse ruling as to title, constituted an election to regard the adjudication of title as final and conclusive. The denial of the request for a jury did not alter the fact appellant had elected to stand on the judgment which denied his title. Irrespective, however, of the question of election we are satisfied the judgment of the trial court cannot be disturbed. It is affirmed.