(126 P.3d 441)
No. 94,006

V. RAY THOMPSON and THERESA M. THOMPSON, *Appellants*, v. HILLTOP LODGE, INCORPORATED, and ALL OTHER PERSONS WHO ARE OR MAY BE CONCERNED, *Appellees.*

Opinion filed January 20, 2006.

*James M. Johnson*, of Frasier & Johnson, of Beloit, for the appellees.

*Kevin L. Phillips*, of Weltmer Phillips Law Office of Mankato, for the appellants.

Before MARQUARDT, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: This appeal involves a dispute over ownership of a tract of land located on the north edge of property owned by Hilltop Lodge, Incorporated (Hilltop) and on the south edge of property owned by V. Ray Thompson and Theresa M. Thompson. The Thompsons commenced an action to quiet title to the disputed property and now appeal the trial court's determination that they did not acquire title to the disputed piece of property by adverse possession. We affirm.

The Thompsons moved onto their property in 1982 and subsequently purchased it in 1984. Hilltop has owned the property directly south of the Thompsons' property since 1971. The disputed property is a tract of land located on the south edge of the Thompsons' property and the north edge of property owned by Hilltop. Hilltop's parking lot abuts the disputed property.

The Thompsons did not know the exact location of the property line. No survey was done when they bought the property. There were no stakes or pins marking the property line and no visibly apparent property line existed.

After moving onto the property in 1982, the Thompsons or their representatives maintained the lawn extending to the parking lot of Hilltop, including the tract of land in dispute. Sometime in 1991 or 1992, the Thompsons installed a fence and, later, planted trees on the tract of land in dispute. The Thompsons did not have a survey completed when they installed the fence.

Hilltop employees also maintained the disputed tract of land. Richard Burks was Hilltop's head of maintenance from 1980-1990. During this time, Burks said he mowed about 3 swaths (mower deck was 36-42 inches wide) of the disputed property, installed rock and rail timbers between the parking lot and an old existing fence, and sprayed and weeded the rocks in that area.

Jerry Johnson has been a maintenance worker at Hilltop since May 1991. After the Thompsons installed the fence, Johnson always mowed the area up to the new fence. Johnson also sprayed the rocky area between the parking lot and fence. After the Thompsons planted the trees, Johnson mowed around the trees as well. Finally, throughout his employment, Johnson replaced a few of the boards from the fence because cars occasionally hit the fence and broke the boards.

The current director of maintenance, John Kohler, has worked at Hilltop for the past 14 years. Kohler has also mowed the lawn on the disputed property. The Thompsons never indicated to any of Hilltop's employees that they should discontinue maintenance on the property or that the Thompsons were the owners of the property.

When Mr. Thompson decided to install the fence, he approached Harold Heidrick, Hilltop's chief executive officer, and asked Heidrick if he would pay for one-half of the fence. Heidrick and Kohler determined that the fence should be located at least 3 feet back from the parking lot curb so that vehicles would not hit and damage the fence. Neither Heidrick nor any Hilltop employee

ever represented to Mr. Thompson that the fence was the property line. Heidrick agreed to pay one-half of the fence cost.

Similarly, Mr. Thompson requested that Heidrick pay for one-half of the costs of planting trees on the disputed tract of land. Again, Heidrick agreed to pay for one-half of the Thompsons' costs.

The Thompsons brought an action to quiet title to the disputed tract of land. The trial court determined that the Thompsons did not acquire title to the property by adverse possession and, therefore, Hilltop was the rightful owner of the property. The Thompsons timely appeal.

"Whether title is acquired by adverse possession is a question of fact to be determined by the trier of fact. [Citation omitted.] The standard of review therefore is whether there is substantial competent evidence to support the trial court's findings. [Citation omitted.] Further, the reviewing court does not reweigh the evidence or judge the credibility of witnesses. [Citation omitted.]" *Barrett v. Ninnescah Bow Hunters Ass'n*, 15 Kan. App. 2d 241, 246-47, 806 P.2d 485, *rev. denied* 248 Kan. 994 (1991).

To acquire title by adverse possession a person must be "in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." K.S.A. 60-503.

The trial court determined that the Thompsons' use of the disputed land was "incidental, permissive and not of the character needed to give unequivocal notice to [Hilltop] of [the Thompsons'] claim of title to the tract." Specifically, the Thompsons' "maintenance of a lawn along an open boundary does not constitute an adverse holding or give sufficient notice to the owner of title to support a claim of adverse possession."

As the facts showed, both parties cared for the property in various ways, with no indication that the Thompsons were exclusively providing the maintenance.

Accordingly, there is substantial competent evidence to support the trial court's determination that the Thompsons' use of the property did not give unequivocal notice to Hilltop of the Thompsons' claim of title to the tract.

Next, the trial court determined that the Thompsons did not have exclusive possession of the disputed tract of land for 15 years.

As discussed above, several of Hilltop's maintenance employees testified that during their employment they were responsible for maintaining the property, both before and after the fence was installed and the trees planted.

Again, the evidence runs against adverse possession as Hilltop's employees were exhibiting activities which seem to show possessory interest by Hilltop.

Accordingly, there is substantial competent evidence to support the trial court's determination that the Thompsons did not have exclusive possession of the disputed tract of land for 15 years.

Finally, the trial court determined the Thompsons did not prove they held the property under a good faith belief of ownership. Specifically, the court concluded Mr. Thompson's discussions with Heidrick about placing the fence, planting the trees, and sharing the costs showed the lack of a good faith belief of ownership.

Furthermore, Mr. Thompson testified that he did not know the exact location of the property line. No survey was done when he bought the property. There were no stakes or pins marking the property line and no clear property line existed. Finally, the Thompsons did not have a survey completed when they installed the fence. Accordingly, there is substantial competent evidence to support the trial court's determination that the Thompsons did not hold the property under a good faith belief of ownership.

As a result, there is substantial competent evidence to support the trial court's determination that the Thompsons did not acquire title to the property by adverse possession.

The Thompsons also assert that they should be compensated for the improvements made to the property because they occupied the property under color of title. The trial court did not award the Thompsons any damages for improvements to the property.

The trial court's decision did not address whether the Thompsons occupied the property under color of title. Nevertheless, generally, when neither party has objected to inadequate findings of fact, the trial court is presumed to have found all facts necessary to support the judgment. *Gilkey v. State*, 31 Kan. App. 2d 77, 77-78, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003).

The standard of review is whether the record contains sufficient evidence to support the trial court's judgment denying damages for improvements to the disputed property. See *Board of Wyandotte County Comm'rs. v. Adkins*, 12 Kan. App. 2d 522, 523-24, 749 P.2d 1056 (1988).

K.S.A. 60-1004 permits a person who peacefully occupies property under color of title in good faith to be compensated for good faith improvements thereon. However, the record indicates that the Thompsons did not occupy the disputed property under color of title.

" 'Color of title has reference to something which has the appearance or gives the semblance of title but is not such in fact. It has been termed "apparent right." ' [Citations omitted.] A writing which professes to pass title on its face but which does not do so either due to lack of title in the person making it or from some type of defective conveyance may constitute 'color of title.' [Citation omitted.]" *Munkres v. Chatmon*, 3 Kan. App. 2d 601, 604, 559 P.2d 314 (1979).

The Thompsons acquired title from Anne B. Briginshaw for the following real estate:

"A tract of land commencing 700 feet North of the Southeast corner of the Southeast Quarter (SE 1/4) of Section Five (5), Township Seven (7) South, Range Seven (7) West of the Sixth Principal Meridian, Mitchell County, Kansas, thence West Three Hundred (300) feet; thence North One Hundred Twenty (120) feet; thence East Three Hundred (300) feet; thence South One Hundred Twenty (120) feet to the place of beginning, all in Mitchell County, Kansas."

The relevant part of Hilltop's deed included the following real estate:

"A tract of land commencing 165 feet West of the Southeast corner of the Southeast Quarter of Section Five (5), Township Seven (7) South, Range Seven (7) West of the 6th P.M.; thence North 275 feet; thence East 165 feet; thence North 425 feet; thence West 300 feet; thence North 328.25 feet . . . ."

The starting points for both property descriptions are at the "Southeast corner of the Southeast Quarter of Section Five (5), Township Seven (7) South, Range Seven (7) West of the Sixth [Principal Meridian]." The Thompsons' property begins 700 feet north of the starting point. Hilltop's property ends 700 feet north of the starting point (thence North 275 feet; . . . thence North

425 feet). Both properties then run west for 300 feet. It is along this property line that the disputed property is located.

The deed which the Thompsons received from Briginshaw did not profess to pass title to the disputed property to the Thompsons. According to the Thompsons' deed, their property began 700 feet north of the starting point described in the deed. According to the survey completed by Schwab-Eaton in 2002, the Thompsons' trees and fence were located south of the deed's starting point. Therefore, if the deed did not profess to pass title of the disputed property, the Thompsons could not have occupied it under color of title.

The record does not contain any facts to support the contention that the Thompsons occupied the property under "color of title." Accordingly, there is sufficient evidence to support the trial court's denial of damages for improvements to the disputed property.

Affirmed.